UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
98 FEB -5 PM 3:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

BERMAN BROTHERS IRON AND )
METAL COMPANY, INC., )
    Plaintiff, )
vs. ) Civil Action No. CV97-S-1945-S
CERTIFIED INDUSTRIAL )
TECHNOLOGIES, INC., )
    Defendant. )

ENTERED
FEB - 5 1998

## MEMORANDUM OPINION

Defendant, Weber Corporation 3, Ltd. (formerly known as Certified Industrial Technologies, Inc.), issued a third-party subpoena for production of documents to a non-party, Liberty Mutual Fire Insurance Company. Liberty Mutual moved to quash. Defendant countered with a motion to compel.

This action arises from an allegedly defective aluminum melting furnace constructed by defendant for plaintiff, Berman Brothers Iron and Metal Company, Inc. Seven years after installation on Berman Brothers' premises in Birmingham, Alabama, the furnace leaked molten aluminum. Berman Brothers claimed coverage for the resulting damage under a policy of property insurance issued by Liberty Mutual. Liberty Mutual denied coverage, and commenced a declaratory judgment action in the United States District Court for the Northern District of Alabama (CV-95-N-2668-S), seeking to avoid liability under a policy provision excluding coverage for "wear and tear; rust, corrosion, fungi, decay, deterioration, wet or dry rot; hidden or latent defect or

any condition in the property that causes it to damage or destroy itself." Berman Brothers counterclaimed for fraud in the sale of the policy. The parties conducted discovery, including depositions of experts and Berman Brothers' corporate representatives. Berman Brothers and Liberty Mutual settled the declaratory judgment action on January 30, 1997, with a payment of $360,000 by Liberty Mutual to Berman Brothers.

Note well that the same lawyers who represented Liberty Mutual in the prior declaratory judgment action against Berman Brothers, now represent Berman Brothers in this action. They also continue to represent Liberty Mutual in the present controversy over the non-party subpoena.

The subject subpoena requests thirty-four categories of documents, ranging from "[a]ny and all documents evidencing, relating to, reflecting or otherwise pertaining to Berman," to "[a]ny and all photographs, video tapes or motion pictures of the Furnace taken or made at any time." (Subpoena ¶¶ 1, 34.) Liberty Mutual's various objections to the subpoena may be grouped in four categories, each of which is discussed below.

## I. TERRITORIAL LIMITATION

Rule 45(e) of the Federal Rules of Civil Procedure provides: "An adequate cause for failure to obey [a subpoena] exists when a subpoena purports to require a non-party to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A)." Rule 45(c)(3)(A)(ii) provides that a court may quash a subpoena if it requires a non-party to "travel to a place more

than 100 miles from the place where that person resides." Liberty Mutual contends the relevant documents are located in Norcross, Georgia, more than 195 miles from the place of production, Birmingham, Alabama.

Even so, "records kept beyond the territorial jurisdiction of the district court issuing the subpoena may be covered if they are controlled by someone subject to the court's jurisdiction." 9A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2456, at 31 (1995). Defendant claims the documents <u>are</u> "controlled by someone subject to the court's jurisdiction," because Liberty Mutual maintains an office in Birmingham, all events relevant to the litigation occurred in Birmingham, its lawyers commenced the prior declaratory judgment in Birmingham, and its lawyers are located in Birmingham. (Motion to Compel, at ¶ 10(a).) This court agrees. The subpoena will not be quashed on the basis of the territorial location of the documents sought.

## II. "UNDUE BURDEN" CAUSED BY THE SUBPOENA

Rule 45(c)(3)(A)(iii) permits this court to modify or quash a subpoena if it "subjects a person to undue burden." Liberty Mutual asserts the subpoena would subject it to undue financial burden, because the subpoena requests "any and all documents" pertaining to its relationship with Berman Brothers.

Liberty Mutual claims that it "has sold and written policies of insurance for Berman Brothers for approximately three years. These policies include liability policies, property policies, and workers' compensation policies." (Moore affidavit ¶ 5.) Arthur

3

Moore, claims manager for Liberty Mutual's Birmingham, Alabama office, provides the following testimony on the burden which would be imposed by the subpoena's allegedly broad sweep.

> 7. Liberty Mutual would be required to hire five temporary employees working full-time for approximately two months to obtain all responsive paper records, information stored on microfilm and/or in the computer. I conservatively estimate that the cost of searching just for Berman's claims information would be $23,200. This expense does not include the cost of copying each claims file.
>
> 8. The above costs do not account for the added expense of searching for any and all underwriting, auditing, and sales material pertaining to Berman. Liberty Mutual underwriting offices are located in Atlanta and Gainesville, Georgia. Auditing information with regard to Berman could be located in any one of four offices located in Tampa, Florida; Norcross, Georgia; Brentwood, Tennessee; and Birmingham, Alabama. To obtain any and all such information relating to Berman, Liberty Mutual would be required to hire additional staff to conduct a search of the paper, computer, and/or microfilm records at these facilities.

(*Id.* ¶¶ 7, 8.)

This court agrees that the following requests are too broad in their sweep and, therefore, overly burdensome.

> 1. Any and all documents evidencing, relating to, reflecting or otherwise pertaining to Berman.
>
> 2. Any and all documents evidencing, relating to, reflecting or otherwise pertaining to the Policy.
>
> 5. Any and all documents evidencing, relating to, reflecting or otherwise pertaining to Liberty Mutual Fire Insurance account number 268671.[1]

---

[1] The record before the court demonstrates that the policy at issue was numbered MC2-15P-**268671**-064. This court therefore presumes that Weber's requests for information pertaining to "Liberty Mutual Fire Insurance account number 268671" are directed towards <u>any</u> material pertaining to the policy. If that presumption is correct, the requests are overbroad. If the claim number for the accident in question was "28671," however, Weber is entitled to the requested documents.

4

7. Any and all correspondence or other communications between Liberty Mutual and Berman.

11. Any and all correspondence or other communications between Liberty Mutual and Berman pertaining to any one or more of the following:
    a. the Policy;
    ...
    d. Liberty Mutual Fire Insurance Company account number 268671.[2]

12. Any and all correspondence or other communication between Liberty Mutual and any person or entity other than Berman pertaining to any one or more of the following:
    a. Berman.
    b. the Policy.
    ...
    e. Liberty Mutual Fire Insurance Company account number 268671;[3]

13. Any statement by or on behalf of Berman pertaining to any one or more of the following:
    a. the Policy;
    ...
    d. Liberty Mutual Fire Insurance Company account number 268671;[4]

14. Your underwriting file for the Policy.

17. Any and all reports of audits of Berman that were made by or on your behalf in connection with the Policy.

18. Any documents submitted by Berman to you or to anyone acting on your behalf for purposes of an audit of Berman in connection with the Policy.

19. Your claim file or files for any and all claims submitted to you by Berman under the Policy.

22. Any and all documents pertaining to payments by Liberty Mutual to Berman under the Policy.

24. Any documents provided to you by Berman pertaining to any one or more of the following:

---

[2] See note 1 *supra*.

[3] See note 1 *supra*.

[4] See note 1 *supra*.

       a. The Policy

25. Any statements reports or analyses prepared by or for you, or on your behalf, pertaining to any one or more of the following:
    a. The Policy

As drafted, those requests broadly request information related to other policies issued to Berman Brothers, as well as unrelated claims made under the same insurance policy. Liberty Mutual would be subjected to an undue burden if it were forced to produce "any and all documents" in Liberty Mutual's possession which relate to Berman Brothers.

This court consequently finds that defendant only is entitled to those documents in the possession of Liberty Mutual which pertain to the allegedly defective furnace, the spill which led to Liberty Mutual's coverage dispute with Berman Brothers, Liberty Mutual's declaratory judgment action against Berman Brothers, or Liberty Mutual's claim file for the spill.

### III. CONFIDENTIAL, PROPRIETARY INFORMATION

Liberty Mutual also bases some objections on Rule 45(c)(3)(B)(i), which allows this court to quash or modify a subpoena "requir[ing] disclosure of a trade secret or other confidential research, development, or commercial information." Liberty Mutual claims that requests 5, 14, 17, and 18 seek "confidential, commercial information about its customers, its underwriting practices, and its negotiations with insureds." (Supplemental brief in support of motion to quash at 7.) In part II, *supra*, this court found that requests 5, 14, 17, and 18 were unduly burdensome. Therefore, defendant's third objection to those

requests is moot.

### IV. THE WORK PRODUCT DOCTRINE

Finally, Liberty Mutual asserts that its materials are subject to the "work product" protection of Federal Rule of Civil Procedure 26(b)(3), providing that:

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative (<u>including the other party's attorney, consultant, surety, indemnitor, insurer, or agent</u>) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. [emphasis supplied]

Specifically, Liberty Mutual contends that it is an "insurer" which prepared documents in preparation for litigation. (Supplemental brief in support of motion to quash at 9.)

The party objecting to discovery bears the burden of establishing the information sought is protected by the work product doctrine. *Auto Owners Insurance Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 201 (M.D. Fla. 1990); *Lott v. Seaboard Systems Railroad, Inc.*, 109 F.R.D. 554, 557 (S.D. Ga. 1985). Liberty Mutual's attempt to satisfy that burden is bottomed upon this contention: "Documents prepared in anticipation of one litigation that would have been shielded retain the protection in a second litigation if the two actions are closely related in parties or subject matter." (Supplemental brief in support of motion to quash at 8 (quoting *Garrett v. Metropolitan Life Ins. Co.*, 1996 WL 325725 at *4 (S.D.N.Y. June 12, 1996)).)

Liberty Mutual's authority is factually distinguishable from the present action. In *Garrett*, an insurance company involved in class action litigation retained a third party to survey its policyholders to determine whether any information of improper sales practices. The plaintiffs in a subsequent class action raising the same issues subpoenaed the survey results from the third party. The Southern District of New York granted work product protection, because the survey was prepared in anticipation of litigation for the prior class action. 1996 WL 325725 at *4. Implicitly, the court found that the third party was acting as the insurance company's representative when it performed the survey. In contrast, in this action, Liberty Mutual was not acting as Berman Brothers' representative when it collected the materials which are the subject of the subpoena. Rather, it was acting in its own financial interest as a litigant in opposition to Berman Brothers: it sought information supporting its contention that Liberty Mutual was not obligated to Berman Brothers under the terms of the policy.

Moreover, defendant points this court to cases from other jurisdictions holding that an insurer must be acting as a representative of the party objecting to discovery <u>at the time the insurer prepares the material</u>, before the work product doctrine applies. See *Duck v. Warren*, 160 F.R.D. 80, 82 n.1 (E.D. Va. 1995)(nonparties were not defendant's representatives at the time they prepared the materials); *Hawkins v. South Plains International Trucks, Inc.*, 139 F.R.D. 682, 684 (D. Colo. 1991)(the rule limits

protection to one who is a representative to the litigation in which discovery is sought); *Rickman v. Deere & Co.*, 154 F.R.D. 137, 138 (E.D. Va. 1993), *aff'd*, 36 F.3d 1093 (4th Cir. 1994)("Reports prepared by Farm Bureau in preparation for its own potential subrogation litigation therefore do not fall within the literal terms of Rule 26(b)(3) for the purposes of this action"); *Bunting v. Gainesville Machine Co.*, 53 F.R.D. 594, 595 (D. Del. 1975)("When plaintiffs presented their claim under the Workmen's Compensation law it was necessary for Liberty Mutual to be in a position to protect itself against the assertion by plaintiffs of a false or exaggerated claim of injury").  This court finds those cases persuasive, and holds that Liberty Mutual was not a "representative" or "insurer" of Berman Brothers when it prepared or obtained the materials in question.[5]

The law is clear that the work product "rule, on its face, limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought." *California Public Utilities Commission v. Westinghouse Electric Corp.*, 892 F.2d 778, 781 (9th Cir. 1989); *Chaney v. Slack*, 99 F.R.D. 531, 533 (S.D. Ga. 1983). Liberty Mutual is not a party to the present litigation, and was not acting as Berman Brothers'

---

[5] As an alternative holding, this court finds that Liberty Mutual failed to meet its burden of demonstrating that it is entitled to work product protection. It made a blanket assertion of the privilege, and failed to provide this court with a "privilege log" detailing those documents which allegedly were privileged. *See* Auto Owners Insurance Co. v. Totaltape, Inc., 135 F.R.D. 199, 201 (M.D. Fla. 1990)("Plaintiff's argument that the 'very nature' of the documents precludes their discovery is simply insufficient"); Dorf & Stanton Communications, Inc. v. Molson Breweries, 100 F.3d 919, 923 (Fed. Cir. 1996)(district court did not abuse discretion in finding privilege waived by plaintiff's failure to prove a privilege log).

representative when it prepared the materials in question.

## IV. CONCLUSION

In summary, this court finds that Weber Corporation 3, Ltd. is entitled to discover those documents in the possession of Liberty Mutual which pertain to: the allegedly defective furnace; the spill which led to Liberty Mutual's coverage dispute with, and declaratory judgment action against, Berman Brothers; or Liberty Mutual's claim file for the spill.

As an important *caveat*, however, this court stresses that Liberty Mutual only must produce those documents which were prepared prior to January 30, 1997: the date that Berman Brothers and Liberty Mutual settled their coverage dispute. On that date, Liberty Mutual became subrogated to any recovery by Berman Brothers against defendant, and their interests were sufficiently aligned from that date forward that Liberty Mutual may be considered Berman Brothers' "representative" in connection with documents prepared after January 30, 1997. *See In re Subpoena Duces Tecum served on New York Marine and General Insurance Co.*, 1997 WL 599399 (S.D.N.Y. Sept. 26, 1997)(upholding work product doctrine where plaintiff and third-party insurer entered into "cooperation agreement" for recover against defendant primary insurer).

For the foregoing reasons, this court concludes that the motion to quash is due to be denied in part, but also granted in part. An appropriate order consistent with memorandum opinion shall issue contemporaneously herewith.

**DONE** this ___5th___ day of February, 1998.

_____
United States District Judge

11